OPINION
{¶ 1} Defendant, Brian Gillingham, appeals from his convictions on seven counts of pandering obscenity involving a minor, R.C. 2907.321(A)(2) and (A)(5), one count of possession of criminal tools, R.C. 2923.24(A), and one count of gross sexual imposition, R.C. 2907.04(A)(4). Gillingham was acquitted of seven other counts of pandering obscenity involving a minor.
 {¶ 2} The charges against Gillingham arose from computer images he transmitted to another man, David Schneider, containing pornographic depictions of young children. Gillingham had told Schneider that he had a spanking fetish. When Englewood police later searched Gillingham's home, they seized his computer, computer equipment, documents, and a videotape portraying Gillingham spanking a naked six year old boy. The boy was at Gillingham's home when police arrived.
 {¶ 3} Examination of Gillingham's computer revealed an empty file that formerly contained images Gillingham had sent to Schneider. In addition, five images were found on the computer. Douglas Arnold, an employee of the Miami Valley Regional Crime Lab, testified at trial that the images on Gillingham's computer and those he had transmitted to Schneider portrayed real children, not virtual or computer-created images of children. However, in a trial to the bench, the court made its own findings, independent of Arnold's opinion, that the children portrayed were real children, not virtual images.
 {¶ 4} Gillingham was sentenced to serve multiple terms of imprisonment, concurrent and consecutive, for an aggregate term of eleven years. He filed a timely notice of appeal
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "THE TRIAL COURT ERRED IN DENYING GILLINGHAM'S SUPPLEMENTAL MOTION TO DISMISS ON THE BASIS OF THE CONSTITUTIONAL INFIRMITY OF R.C. 2907.321."
 {¶ 6} Defendant Gillingham filed two pretrial motions to dismiss pursuant to Crim.R. 12(C)(1), attacking the constitutionality of R.C. 2907.321, the pandering obscenity involving a minor section, in several respects.
 {¶ 7} In his first motion (Dkt. 48), Gillingham argued that the provision of R.C. 2907.321(B)(3) that permits a court to "infer that a person in the (prohibited) material or performance is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor", is an unconstitutional violation of the separation of powers principle.
 {¶ 8} Neither the Federal Constitution nor the Constitution of Ohio contains an express "separation of powers" provision. Rather, in both instances, the doctrine is a product of the framework of those sections of both documents that define the substance and scope of the respective powers granted to the three coordinate branches of government. Of significance in the Ohio Constitution is Article II, Section 34, which prohibits the General Assembly from exercising any judicial power. Gillingham argued that R.C. 2907.321(B)(3) violates that prohibition by creating an inference, a finding which is a function of the judicial power and therefore an invalid legislative exercise of the judicial power conferred on the courts by Article IV, Section 1, and prohibited by Article II, Section 34.
 {¶ 9} The trial court did not grant Defendant's first motion to dismiss, but the court nevertheless avoided the issue Defendant's motion presented by holding that it would not rely on R.C. 2907.321(B)(3), and would instead require the State to prove that the images in the materials underlying the pandering charges against Defendant portray real children, not virtual
children. The court reasoned that the features of R.C.2907.321(B)(3) that apply the prohibitions of R.C. 2907.321 to material that merely "represents or depicts the person as a minor" are similar to provisions applicable to virtual child pornography that were struck down as violations of the First Amendment in Ashcroft v. Free Speech Coalition (2002),535 U.S. 234, 122 S.Ct. 1389, 159 L.Ed. 2d 403.
 {¶ 10} Defendant Gillingham's second motion to dismiss (Dkt. 56) relied specifically on Ashcroft. Though his argument was again couched as an attack on R.C. 2907.321(B)(3), Defendant contended that Ashcroft holds that "a State may only ban the possession of obscene material that portrays sexually explicit conduct of actual children," (Motion, p. 9), and that virtual child pornography is therefore entitled to First Amendment protection. Defendant repeats that argument on appeal.
 {¶ 11} R.C. 2907.321, Ohio's pandering obscenity involving a minor statute, prohibits any person with knowledge of the character of the material or performance involved from selling or disseminating "any obscene material that has a minor as one of its participants," (A)(2), and/or from buying or possessing "anyobscene material that has a minor as one of its participants or portrayed observers", (A)(5). (Emphasis supplied). Paragraph (B)(3) of that section, on which the trial court did not rely, permits the court to infer "that a person in the material or performance is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor."
 {¶ 12} Unlike the present case, Ashcroft was not an adjudication of criminal liability. It was instead a declaratory judgment action brought by suppliers of material depicting children in an attack on the constitutionality of the Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C. § 2556(8)(1), et. seq. Provisions of the CPPA criminalized possession or distribution of a computer-generated image or picture that "is, or appears to be, of a minor engaging in explicit sexual conduct", § 2256(8)(B), as well as an image that "conveys the impression" that it depicts "a minor engaging in sexually explicit conduct", § 2256(8)(D). Those provisions criminalized possession and/or distribution of "virtual child pornography", that is, computer-generated images. The Supreme Court held that the prohibitions were overly-broad in relation to the First Amendment rights affected.
 {¶ 13} The Supreme Court explained in Ashcroft, as it had in Ferber v. New York (1982), 458 U.S. 747, 102 S.Ct. 3348,73 L.Ed.2d 113, that because some images of minors engaged in sexual activity depict ideas that have been a theme of art and literature for centuries, the depictions prohibited by the CPPA, as a general classification, may be outside the definition of obscenity in Miller v. California (1973), 413 U.S. 15,93 S.Ct. 2607, 37 L.Ed.2d 419; that the work, taken as a whole, appeals to the prurient interest, is patently offensive in the light of community standards, and lacks serious literary, artistic, political, or scientific value. Id. Not being necessarily obscene, materials prohibited by the CPPA could be subject to criminal sanctions only if shown to be intrinsically related to the sexual abuse of children in two further respects. Ferber.
First, that as a permanent record of a child's abuse, continued circulation of the materials would harm the child involved. Second, because traffic in child pornography is an economic incentive for its production, that the state has an interest in closing the distribution network. Id.
 {¶ 14} Ashcroft held that the possibly non-obscene materials to which the CPPA applied, to the extent that they included computer-generated "virtual" images of minors engaged in sexual activity, could not be intrinsically related to sexual abuse of children under the Ferber tests for two reasons. First, because a virtual depiction does not involve an actual child in its production, virtual material of that kind "records no crime and creates no victims by it production." Id., at 236. Second, any causal link to harm suffered by real children in the production of virtual child pornography is contingent and indirect, because it does not necessarily follow from the speech involved but instead depends on some unquantifiable potential for subsequent criminal acts. Id.
 {¶ 15} Defendant-Appellant Gillingham argues that the considerations applied in Ashcroft likewise apply to the violations of R.C. 2907.321(A)(2) and (A)(5) of which he was convicted, because on their facts they may likewise involve virtual images of children. In that connection, he points to R.C.2907.321(B)(3), which by its terms permits an inference that virtual depictions portray real children.
 {¶ 16} The trial court expressly rejected application of R.C.2907.321(B)(3), holding that the section permits a restriction on speech prohibited by Ashcroft. Instead, the court relied on its own examination of the materials concerned and reached its conclusions exclusively from its own observations, also declining to rely on testimony the parties offered relevant to whether the images were real or virtual.
 {¶ 17} The question whether images are virtual or real is for the trier of fact to determine. State v. Huffman,165 Ohio App.3d 518, 2006-Ohio-1106. When the trier of fact is capable of reviewing the evidence to determine whether the prosecution met its burden to show that the images depict real children, the state is not required to present any additional evidence or expert testimony to meet the burden of proof to show that the images downloaded on a computer depict real children. UnitedStates v. Slanina (C.A. 5, 2004), 359 F.3d 356; United Statesv. Kimler (C.A. 10, 2003), 335 F.3d 1132.
 {¶ 18} The trial court found, based on its own examination of the evidence, that the video materials which the State introduced to prove Gillingham's offenses depict real children, not virtual children. Gillingham argues that, nevertheless, the court could not reasonably have found that the images depicted in the materials which are the subject of the charges against him are not virtual, but instead portray real children, because the difference between the two forms of image is so slight as to be indistinct to an untrained observer. However, Ashcroft did not establish a broad, categorical requirement that, absent direct evidence of identity, an expert must testify that the alleged unlawful image is that of a real child. United States v.Farrelly (C.A. 6, 2004), 389 F.3d 649, 655. A defendant's claim that the images may have been virtual and not real is purely speculative, and the State is not then required to offer evidence to rebut it. United States v. Vig (C.A. 8, 1999), 167 F.3d 443.
 {¶ 19} The trial court made identical findings of fact in support of each of the seven violations of R.C. 2907.321 of which Gillingham was convicted. First, as to each, the court found that the particular exhibit the State offered to prove the violation depicts a real minor. That finding satisfies the requirement of R.C. 2907.321(A)(2) that the material "has a minor as one of its participants or portrayed observers" and the requirement of R.C.2907.321(A)(5) that the material "has a minor as one of its participants." It also places no reliance on the inference that R.C. 2907.321(B)(3) permits.
 {¶ 20} Second, as to each of the particular exhibits on which the State relied to prove the seven violations, the trial court found that each exhibit, when considered as a whole and judged with reference to ordinary adults, has as its dominant appeal an appeal to the prurient interest. The court also found that the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest. And, finally, that when taken as a whole, the work lacks serious literary, artistic, political, or scientific value. Those findings satisfy the tests for obscenity in Miller v.California.
 {¶ 21} Ashcroft involved no such findings. It was instead brought as an attack on the constitutionality of the CPPA and its provisions, which did not involve an obscenity element, as R.C. 2907.312 expressly does. The further findings the court here made are significant because a finding that materials are obscene avoids any need to apply the alternative Ferber tests, which concern only materials that are not obscene, as well asAshcroft's particular application of Ferber to virtual materials that were prohibited by the federal statute but were not necessarily obscene. Indeed, by its terms, R.C.2907.321(A)(2) applies only to "obscene material." Therefore,Ashcroft has no application to the offenses with which Defendant-Appellant was charged and of which he was convicted, and the findings the trial court made are sufficient in law to support his convictions for violations of R.C. 2907.321(A)(2) and (A)(5).
 {¶ 22} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 23} "THE TRIAL COURT ERRED BY OVERRULING GILLINGHAM'S MOTION FOR MISJOINDER AND SEVERANCE."
 {¶ 24} Gillingham was charged by indictment on September 24, 2002 (Dkt. 2), with one count of gross sexual imposition. R.C.2907.05(A)(4). He was "reindicted" on October 31, 2002 on the remaining charges of pandering obscenity involving a minor, R.C.2907.321(A)(2) and (A)(5), and possession of criminal tools, R.C.2923.24(A). The two indictments were consolidated for trial. Gillingham moved to sever the GSI charge from the others, asking for two trials. The trial court denied the motion.
 {¶ 25} Crim.R. 13 provides, in pertinent part:
 {¶ 26} "The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."
 {¶ 27} Joinder of offenses is justified primarily for reasons of administrative efficiency. Crim.R. 14 provides that "the court shall order an election or separate trial of counts" in indictments joined pursuant to Crim.R. 13 "[i]f it appears that a defendant or the state is prejudiced by joinder of offenses." However, "[w]here the evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to the cumulation of the inference of a criminal disposition is largely absent." State v. Hamblin
(1988), 37 Ohio St.3d 153, 159.
 {¶ 28} Proof of the GSI charge was in the form of a video depicting Gillingham spanking a naked child on the buttocks. Evidence of the pandering obscenity charges was likewise in video form, involving computer images of other young children who were victims of similar assaults but which did not depict Gillingham. The criminal tools charge involved the computer in Gillingham's home on which those other images were transmitted.
 {¶ 29} The GSI charge and the pandering obscenity and criminal tools charges against Gillingham could have been joined in a single indictment. Gillingham argues that he was prejudiced by their joinder for trial because the GSI charge requires proof of "sexual gratification" and the evidence of computer video depictions the State offered to prove the pandering obscenity charges permitted the jury to consider "other acts" evidence prohibited by Evid.R. 404(B) if offered to prove sexual gratification. Gillingham points out that the State offered no other evidence that he possessed those computer images for purposes of sexual gratification.
 {¶ 30} In order to prove the GSI charge, the State was required to show that Gillingham had sexual contact with the six-year old boy he spanked. "Sexual contact" is defined by R.C.2907.01(B) to include touching of another's buttock "for the purpose of sexually arousing or gratifying either person."
 {¶ 31} For purposes of the crime of rape, which requires proof of "sexual conduct", the definitions of sexual conduct in R.C. 2907.01(A) necessarily imply that the actor's motive is sexual gratification, and so no further proof of sexual gratification is required when sexual conduct is proved. Statev. Smith (1992), 84 Ohio App.3d 647. However, sexual contact, as defined by R.C. 2907.01(B), does not necessarily imply that the actor's purpose was sexual gratification. In order to prove that motive, competent evidence of other acts, relevant to prove the accused's motive or purpose is admissible. Evid.R. 404(B); R.C.2945.59.
 {¶ 32} While the video depicting Gillingham spanking a naked six year old boy would be considered by many to portray a perversion involving sexual gratification, the proposition is not necessarily self-evident. The boy had been put in Gillingham's care, and one might infer that he merely acted to discipline the boy for misconduct when he spanked him. However, the computer videos that Gillingham sent Schneider, showing naked children who suffered similar assaults, tend to portray an obsession in the nature of a sexual fetish, permitting a finding that Gillingham's motive when he spanked the boy was sexual gratification prohibited by R.C. 2907.05(A)(4). Therefore, because that evidence would have been admissible to prove the GSI charge, Gillingham was not prejudiced by joinder of the two indictments containing the GSI charge and the pandering obscenity and possession of criminal tools charge in a single trial. Hamblin.
 {¶ 33} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED IN NOT REQUIRING THE STATE TO COMPLY WITH CRIMINAL RULE 16 AND PROVIDE DISCOVERY TO GILLINGHAM THEREBY PRE-JUDGING AN ELEMENT OF THE STATE'S CASE IN VIOLATION OF HIS RIGHT TO DUE PROCESS."
 {¶ 35} Crim.R. 16(B)(1)(c) requires the court, upon motion, to order the prosecutor to permit the defendant to inspect and copy photographs, books, "tangible objects, buildings, or places" which are in the possession of or available to the State "and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from and belong to the defendant." That requirement is nevertheless subject to a protective order issued by the court pursuant to Crim.R. 16(E)(1) and (2), permitting the court to impose restrictions as are appropriate on the time, places and manner of discovery and inspection.
 {¶ 36} The computer equipment seized from Defendant was taken to the Miami Valley Crime Lab, which refused to provide Defendant copies of any materials stored on the equipment. Defendant moved to compel discovery pursuant to Crim.R. 16(B)(1)(c). The trial court granted the motion, though it rejected the State's contention that the copies themselves could be the basis of further pandering obscenity violations. Rather, in consideration of the potential negative effects on any children depicted that were identified in Ashcroft, the court ordered that the equipment be retained at the Miami Valley Regional Crime Lab and that Defendant could have access to it there.
 {¶ 37} Defendant argues that the trial court abused its discretion when it limited his access as it did. He asserts that the equipment "undoubtedly contained exculpatory information" (Brief, p. 10) which "is necessarily Brady material" (p. 11), and that the restriction "destroyed Defendant's opportunity to examine the critical evidence against him (and) required defense counsel and any expert witnesses to memorize the evidence." (P. 12-13). Defendant also contends that "[a]s a result, Gillingham's expert was never able to review the computer evidence and was unable to impeach much of the state's case as a result." (P. 14).
 {¶ 38} Defendant's assertions are wholly conclusory, unsupported by any references to the record portraying the prejudice he alleges. The only exception is his complaint that the restriction to access at the Crime Lab made it "financially and logistically impossible" for his expert to travel to Dayton to examine the material. (P. 13). However, Gillingham didn't seek assistance from the court on that matter, and complained only after four months had passed since the court's order.
 {¶ 39} The restrictions the court imposed were within the discretion conferred on the court by Crim.R. 16(E). Absent some more particularized showing that the restrictions were not appropriate, we find no abuse of discretion.
 {¶ 40} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 41} "THE TRIAL COURT ERRED BY ADMITTING THE TESTIMONY OF BRANDENBURG, LANG, SCHNEIDER AND AUSDENMORE IN AREAS OF EXPERT TESTIMONY WITHOUT THE WITNESS BEING QUALIFIED AS AN EXPERT WITNESS IN THAT AREA OF EXPERTISE."
 {¶ 42} Englewood Police Detective Michael Lang testified for the State concerning the videotape depicting Defendant spanking the six year old boy that Lang had obtained at Defendant's home and re-transcribed. On cross-examination by Defendant, Lang was asked to say what the last statements were that are heard on the tape. (T. 183-184). Lang testified that he could "give my best interpretation(,) that's probably the best I could do for you," (T. 184), but that he probably couldn't say for sure. (T. 185).
 {¶ 43} On re-direct, Lang was asked what his interpretation of the statements was. (T. 187). Defendant objected. The trial court overruled the objection, ruling that Defendant had opened the door with his questions on cross-examination. (T. 187). Lang then testified that his interpretation of the last statement heard on the tape, which was a statement Gillingham made to the boy, was: ". . . you know what, you're going to go back home to your mom soon. I know you want your mom back. I wish I could take you today, but I can't." (T. 192).
 {¶ 44} Defendant argues that Detective Lang was not qualified by Evid.R. 702 to testify as an expert. However, we do not view his testimony, in the response he gave, as expert opinion evidence. It was asked and answered in the context of the authenticity and correctness of his re-transcription of the tape he had found at Gillingham's home. Lang's statement was admissible because it was relevant for that purpose.
 {¶ 45} Defendant argues that the trial court abused its discretion in permitting Douglas Arnold, a Miami Valley Crime Lab employee, to testify that the computer images of children on which Defendant's convictions for pandering obscenity are founded are of real children and not virtual children; that is, computer-generated images. However, Defendant has failed to cite the parts of the record to which he refers. App.R. 16(A)(7). More significantly, the court stated that it relied on its own examination of the images, independent of Arnold's testimony. (Dkt. 102, pp. 18, 25). That renders moot any abuse of discretion in admitting Arnold's testimony in evidence.
 {¶ 46} Defendant argues that the trial court abused its discretion in admitting the testimony of David Ausdenmore (T. 561-781) in evidence. The gist of Defendant's agreement is that Ausdenmore, who testified that differences in digital and actual images make them distinguishable, fails to satisfy the theory and methodology requirements of Evid.R. 702(C). Again, other than but three general references, Defendant's argument fails to cite to where in the 220 page record of the witness's testimony these contentions have support. App.R. 16(A)(7). And, again, the court's decision to rely on its own judgment renders any error moot.
 {¶ 47} David Schneider testified (T. 437-528) concerning computer images Defendant had sent him. Defendant complains that Schneider was not qualified to testify concerning how computer technology works. Defendant's brief makes no references of any kind to the record to support his contentions. App.R. 16(A)(7). We are not required to search the record to find them.
 {¶ 48} The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 49} "THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL AS STATE FAILED TO PRESENT EVIDENCE SEIZED DIGITAL IMAGES WERE ACCESSIBLE TO DEFENDANT."
 {¶ 50} A Crim.R. 29 motion for judgment of acquittal challenges the legal sufficiency of the evidence presented by the state in relation to the reasonable doubt standard. In reWinship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. The test is whether, viewed in a light most favorable to the state, reasonable minds can each different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. If so, the motion must be denied. Id.
 {¶ 51} In the pandering obscenity section, R.C. 2907.321, paragraph (A)(2) prohibits promotion and/or dissemination of child pornography, while paragraph (A)(5) prohibits persons from possessing or controlling such material. The State's theory was that Defendant Gillingham violated these prohibitions when he stored prohibited images on his computer and transmitted some of them to David Schneider.
 {¶ 52} Defendant argues that the State's evidence was insufficient to convict him because Officer Eric Totel of the Englewood Police Department, a State's witness, testified that Defendant's computer was not operational. Defendant cites to the testimony at page 198 of the trial transcript. That page contains the testimony of Officer Kathleen Harrington. Totel's testimony begins at p. 207. However, even assuming that Officer Totel testified as Defendant claims he did, that evidence does no more than to call Defendant's guilt into question.
 {¶ 53} Officer Totel testified that the computer was on and running when he arrived at Gillingham's house to remove it. (T. 210). Douglas Arnold testified that he used special software to clone the hard drives of Gillingham's computer and found a directory structure with numerous references to Brian Gillingham and none to anyone else. (T. 361-371). The file attributes for the images that were the basis of the charges showed that the files had been accessed in January, 2002. (T. 378-384). He also found a container with the same file name ("Realman.JBC") as the file containing the images on David Schneider's computer, along with encryption software and software to scrub files or make them inaccessible. (T. 3273-43, 361-363).
 {¶ 54} Gillingham told Schneider that his fetish was spanking, and he directed Schneider to the corporal punishment area of a website that catered to sexual appetites. (T. 479). The images found in his computer and the ones he sent to Schneider prominently featured the beating and sexual abuse of naked children. The directory structure of the computer contained no files for any person other than Gillingham. From this evidence, the court could find that the State had shown that Gillingham had access to the images in his computer, he knew they were there, he knew the images were pornographic images of real children, and he sent obscene images involving children to David Schneider with full awareness of the nature of the images, evidence from which Gillingham's guilt on the pandering obscenity charges could be found, beyond a reasonable doubt.
 {¶ 55} The fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 56} "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO CALL A SURPRISE WITNESS AFTER THEIR IMAGE AUTHENTICATION WITNESS FAILED TO SUCCEED IN AUTHENTICATING THE SEIZED DIGITAL IMAGES."
 {¶ 57} Again ignoring the requirements of App.R. 16(A)(7), Gillingham fails to cite to the parts of the record on which he relies. Indeed, he fails to even identify the witness to whose testimony he objects. However, to the extent that the testimony went to the "real" or "virtual" distinctions to which the State's witnesses testified, the court eventually made its own determination, independent of the evidence that those witnesses offered.
 {¶ 58} The sixth assignment of error is overruled.
SEVENTH ASSIGNMENT OF ERROR
 {¶ 59} "THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 60} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that, were it not for counsel's errors, the result of the trial would have been different. Id., State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 61} A strong presumption operates in favor of trial counsel's performance, and thus the defendant bears the burden or proving ineffective assistance. Strickland.
 {¶ 62} Defendant argues that he was prejudiced by his trial counsel's failure to call numerous witnesses, by urging material witnesses to assert their Fifth Amendment right, by advising Gillingham to not cooperate with the court psychologist or probation officer, and by failing to impeach Schneider with evidence of his prior convictions. If the record includes any evidence showing these alleged defects in performance, Gillingham fails to tell us where it is. Again, he fails to comply with App.R. 16(E)(7). To the extent that evidence on which Gillingham relies is not in the record, it is not a proper basis for a claim of ineffective assistance of counsel made on direct appeal.
 {¶ 63} Defendant also argues that his counsel was ineffective for failing to object to the testimony of David Ausdenmore that the computer images were of real children. Defendant argues that such "expert" opinion was improper because, as Ausdenmore said, the nature of the images was obvious. Defendant again fails to cite to the record for where that testimony is found. In any event, the trial court avoided any prejudice to Defendant by determining the issue itself.
 {¶ 64} Finally, Defendant contends that his trial counsel lacked a necessary understanding of the fundamental concepts of digital imaging. He refers to several remarks which might demonstrate that, but again fails to cite to where in the record these remarks may be found. Defendant makes several other general assertions which are too vague to overcome the presumption of competence that trial counsel enjoys. Strickland.
 {¶ 65} The seventh assignment of error is overruled.
EIGHTH ASSIGNMENT OF ERROR
 {¶ 66} "THE DEFENDANT'S INDICTMENT FAILED TO STATE WITH SPECIFICITY THE ALLEGED CONTRABAND MATERIAL POSSESSED AND/OR DISTRIBUTED BY GILLINGHAM."
 {¶ 67} Gillingham complains that the counts of the second indictment (Dkt. 8) alleging fifteen separate violations of R.C.2907.321(A)(2) and (A)(5), the pandering obscenity charges, provided insufficient notice of the computer filenames which apply to each particular charge because they fail to specify the filenames in his computer in which the allegedly obscene materials pertaining to each count may be found. Also, and as a result, he may again be prosecuted for the same offenses on the same proof in violation of his rights against double jeopardy, according to Gillingham.
 {¶ 68} Crim.R. 7(B) provides that a statement of an alleged offense in an indictment "may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Other than the operational facts necessary to identify the time and location of the offense and the name of the victim when there is one, no other operational facts need to be pleaded. Evidence is not pleaded. If a defendant believes he lacks notice sufficient to defend against the charges, he may file a motion for a bill of particulars, Crim.R. 7(E), or move to dismiss the charge pursuant to Crim.R. 12(C)(1).
 {¶ 69} Each of the seven counts of the indictment alleging a violation of R.C. 2907.321(A)(2) or (A)(5) of which Gillingham was convicted is in the words of the section concerned. Gillingham moved for a bill of particulars in relation to his first indictment, which alleged the GSI violation. (Dkt. 19). He did not renew the motion following the second indictment containing the pandering obscenity charges. The State nevertheless filed a bill of particulars, which did not make reference to computer filenames. Gillingham filed no additional request for a bill of particulars containing that information. He filed two motions to dismiss (Dkt. 48 and 56), but neither complained about the lack of any reference to computer filenames.
 {¶ 70} The matter of filenames relates to evidence the State might use to prove the pandering obscenity charges. The lack of that information in the indictment did not impair the notice that Gillingham was due. Any possible error was waived by Gillingham's failure to object in the trial court. And, the trial court avoided the double jeopardy problem which Gillingham asserts by identifying the particular exhibit or exhibits on which his conviction on each count of pandering obscenity is founded.
 {¶ 71} The eighth assignment of error is overruled.
NINTH ASSIGNMENT OF ERROR
 {¶ 72} "THE COURT ERRED IN ADMITTING UNAUTHENTICATED DIGITAL IMAGES AS EVIDENCE WITHOUT PROPER AUTHENTICATION."
 {¶ 73} Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 {¶ 74} Gillingham argues that because the images the State offered to prove the pandering obscenity charges are digital images, the State had the burden to offer evidence authenticating them as images of actual children, not "virtual children." There was much evidence offered concerning those differences during the trial. The court ultimately resolved the matter based on its own perceptions, finding that the images are those of real children. The court was entitled to do that, and in doing so it avoided the authentication issue pertaining to virtual images that Gillingham raises on appeal.
 {¶ 75} Gillingham argues that, nevertheless, the court could not make the findings it did because the State offered no evidence from the person or persons who produced the depictions that the persons portrayed in them are minors. That may be determined by the trier of fact from their content and character, and therefore the testimony of a photographer or videographer is unnecessary for authentication. State v. Young (1988),37 Ohio St.3d 249. The trial court in its verdict made the required findings that the persons depicted are minors and stated the reasons for its findings.
 {¶ 76} The State offered the images as evidence of what Gillingham possessed and/or disseminated, taken from his computer files and the related files of his e-correspondent, Schneider. Gillingham initially challenged the charges to which that evidence related by asserting a First Amendment protection, relying on Ashcroft. We have rejected that assertion based on the trial court's finding of obscenity, which avoids the problem found in Ashcroft. The authentication issue was limited to Gillingham's connection to that evidence, and the State fully authenticated the evidence in that respect through testimony of police witnesses and Schneider.
 {¶ 77} The core issues presented by the R.C. 2907.321
pandering charges were whether Gillingham possessed and distributed the images, whether the persons depicted are minors, and whether the materials are obscene. The evidence the State offered for those purposes was sufficiently authenticated to satisfy Evid.R. 901(A).
 {¶ 78} The ninth assignment of error is overruled.
TENTH ASSIGNMENT OF ERROR
 {¶ 79} "THE COURT ERRED IN SENTENCING BY RELYING UPON INACCURATE INFORMATION AS THE BASIS FOR THE IMPOSITION OF SENTENCE."
 {¶ 80} Gillingham complains that several of the facts the court recited at his sentencing and sexual predator hearing (T. 1057-1084) are factually incorrect. Again, Gillingham failed to cite to the record in support of his contentions. Further, a reading of the transcript of the hearing reveals that Gillingham failed to object to the alleged mistakes and that, with respect to two of them, that Gillingham was on probation at the time of his offenses and that he had used a paddle to spank the victim of his GSI offense, no such finding was made. The other matters about which he complains, which concern Defendant's efforts to conceal his misconduct, are conclusions the court was authorized to draw from the evidence.
 {¶ 81} The tenth assignment of error is overruled.
ELEVENTH ASSIGNMENT OF ERROR
 {¶ 82} "THE COURT ERRED IN NOT GRANTING GILLINGHAM'S RULE 29 MOTION AS THE STATUTE PROVIDES NO WAY IN WHICH GILLINGHAM CAN DISTINGUISH PROTECTED FROM PROSCRIBED DIGITAL IMAGES."
 {¶ 83} Gillingham relies on his erroneous view of the rule ofAshcroft which we rejected in overruling his first assignment of error. We likewise reject it here.
 {¶ 84} Gillingham also argues that the State was required to prove, but failed to prove, that he knew that the minors who are depicted in the computer images underlying his conviction are real children. We do not agree.
 {¶ 85} R.C. 2907.321(A) states: "No person with knowledge of the character of the material or performance involved, shall do any of the following:". Divisions (1) through (6) of that section then identify the conduct the section prohibits. In each, including divisions (2) and (5) of which Gillingham was convicted, the conduct prohibited requires proof that the various acts of pandering therein defined involved obscene material or an obscene performance that "has a minor" as one of its portrayed participants and/or observers.
 {¶ 86} Criminal liability requires proof of a voluntary act or omission, committed with the requisite degree of culpability a statutory offense specifies. R.C. 2901.21(A). The requisite culpable mental states are defined in R.C. 2901.22. However, per division (B) of R.C. 2901.21: "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 87} Strict liability offenses are those which "are malaprohibita, i.e., the acts are made unlawful for the public welfare regardless of the (actor's) state of mind." State v.Schlosser, 79 Ohio St.3d 329, 333, 1998-Ohio-716. A statute's advancement of strong public policy considerations evidence the General Assembly's plain intent to create a strict liability offense when no culpable mental state is specified. Id. In that event, in order to prove a violation the prosecution need only prove that the accused engaged in a voluntary act or an omission to perform a voluntary act he is capable of performing.Springfield v. Pullins (1998), 130 Ohio App.3d 346, 358.
 {¶ 88} R.C. 2907.321(A) provides that an offender must act "with knowledge of the character of the material or performance involved . . ." R.C. 2901.22(B) states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 89} The word character refers to "the aggregate of distinctive qualities characteristic of a breed, strain, or type." Webster's Third New International Dictionary. As it is used in R.C. 2907.321(A), the word "character" refers to the obscene material that a portrayal or performance involves. The offender must act with knowledge that the material is obscene. A finding that the material or performance is obscene, applying theMiller v. California standards, supports an inference that the offender knew it to be obscene, when the reasonable doubt standard is also satisfied.
 {¶ 90} In R.C. 2907.321(A), the clause "with knowledge of the character of the material or performance involved" functions to specify a circumstance or condition in addition to the conduct which that section prohibits in divisions (1) through (5). Notably, none of those prohibitions go on to specify that the offender must commit one of the prohibited acts with knowledge
that the person portrayed in the obscene material "is a minor." R.C. 2907.321(A) therefore creates a strict liability offense with respect to those prohibitions, and the General Assembly's intention to do that is plainly indicated by the omission of a specified culpable mental state in relation to divisions (1) through (6) of the section as well as the strong public policy considerations involved, which were explained in Ashcroft.
 {¶ 91} Absence of mens rea in one element of a multi-element offense is not unique. For example, sexual contact with a person less than thirteen years of age is rape in Ohio, "whether or not the offender knows of the age of the other person." R.C. 2907.02(A)(1)(b). Though that section is explicitly a strict liability offense, such express limitations are not required for strict liability to apply. See Schlosser. We find a like result here by reason of the bifurcation of the prohibitions in R.C. 2907.02(A), which limit the "knowingly" requirement to the actor's knowledge of the character of the material involved. Otherwise, R.C. 2907.321(A)(1)-(5) is a strict liability offense. The State was not therefore required to prove that Defendant Gillingham knew that the person or persons portrayed in the material underlying his pandering convictions "is a minor."
 {¶ 92} The eleventh assignment of error is overruled. The judgment of the trial court will be affirmed.