OPINION
{¶ 1} This matter is before the court on the Notice of Appeal of Dana Taylor, filed December 9, 2005. On November 15, 2004, Taylor was indicted on 25 counts of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5), all felonies of the fourth degree. Taylor waived his right to a jury trial, and on July 28 and 29, 2005, a bench trial was held. The court found Taylor guilty on 21 of the 25 counts against him on August 15, 2005. On November 14, 2005, the court sentenced Taylor to 15 months on each count, to be served concurrently.
 {¶ 2} Taylor asserts six assignments of error. At issue in each assignment of error is State's Exhibit 21, which contained explicit child pornographic images retrieved from Taylor's computer and compact discs. The images were categorized in the Exhibit according to each of the 25 counts in the indictment against Taylor.
 {¶ 3} Taylor's first assignment of error is as follows: "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES WHERE THE STATE VIOLATED OHIO RULES OF CRIMINAL PROCEDURE AND FAILED TO ABIDE BY HOLDINGS OF THE OHIO SUPREME COURT ON THOSE ISSUES WHEN THE COMPACT DISC CONTAINING TWENTY-FIVE PHOTOGRAPHS OF PRINTOUTS OF ACTUAL DIGITAL IMAGES WAS NOT PRODUCED TO APPELLANT UNTIL JULY 22, 2005, JUST SIX DAYS BEFORE TRIAL AND SAID PHOTOGRAPHS WERE DIFFERENT THAN THOSE USED IN ITS EXHIBIT 21."
 {¶ 4} Crim. R. 16(B)(1)(c) provides, "Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, * * * available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." "In the event of a violation of Crim. R. 16, a trial court is required to consider the circumstances of the violation, and then impose the least severe sanction consistent with the purposes of the rule.State v. Parker (1990), 53 Ohio St.3d 82, 558 N.E.2d 1164. In considering the sanction necessary to satisfy the purposes of Crim. R. 16, a court must consider whether the failure to provide discovery was willful, the extent to which foreknowledge of the material in question would have benefitted the defendant in the preparation of the case, and the extent of the prejudice suffered as a result of admission of the evidence. State v. Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026."Columbus v. Thevenin, Franklin App. No. 05AP-879, 2006-Ohio-5747.
 {¶ 5} Taylor argues that in the course of discovery the State produced two compact discs of pictures that differed from the images represented in Exhibit 21. Taylor's expert, Dean Boland, an attorney and technology consultant, reviewed the images in Exhibit 21, and the following exchange occurred:
 {¶ 6} "Q. Next I want to ask you about picture 12?
 {¶ 7} "A. Oh! There's one other point I omitted and that is —
 {¶ 8} "Q. On which picture?
 {¶ 9} "A. On number 12.
 {¶ 10} "Q. Okay.
 {¶ 11} "A. If the file path that's printed here is actually the file path and file name of this image this file couldn't possibly have been opened even if the person knew it existed and clicked on it because the file has a .txt extension which would have caused the Windows operating system to attempt to open it in a text * * * program and when you try to open an image in a text program it fails. So it's not possible this image was not opened no matter what because the person clicking on this would have gotten an error on their computer * * *.
 {¶ 12} "A. And you're saying that the State's copy of picture of 12 has the file extension txt on it?
 {¶ 13} "A. It does. * * *
 {¶ 14} "Q. But I appreciate you pointing it out because our copy of that picture doesn't have that txt extension on it."
 {¶ 15} Near the end of the trial, Taylor made the following objection:
 {¶ 16} "Mr. Califf: Your honor, produced to us in this case are these pictures. Admitted as evidence in this Exhibit 21 are also pictures.
 {¶ 17} * * *
 {¶ 18} "Mr. Califf: They're not the same. The pictures in here do not include the .txt files. The pictures in here, State's 21, do.
 {¶ 19} * * *
 {¶ 20} "Mr. Califf: The pictures supplied to us on the disc also have incomplete file names. * * * I have [a] reasonably good feeling that what we have here is pretty good proof of a discovery violation and we'd move to exclude all this under 16 * * * .
 {¶ 21} "The Court: I'm just wondering how are you prejudiced by the exclusion of the .txt language on there?
 {¶ 22} * * *
 {¶ 23} "The Court: Cause we did have testimony on that.
 {¶ 24} * * *
 {¶ 25} "The Court: * * * I still fail to see where the defense has been prejudiced by just discovering that three of the or four of the, there are four pictures, number 12, 13, 14 and 16, have the txt denomination on them and that was very well explained by Mr. Boland as to the effect of that which I wrote down. So the point has been made. I don't know how it could have been made any better if he had that txt indication of those pictures a month beforehand or just a[t] trial. Mr. Boland was very sharp in picking that up and explained it to all of us and I fail to see the prejudice. I know what your argument is but you have to show prejudice as well at this level and there's just no prejudice."
 {¶ 26} Nothing in the record indicates that the State's failure to provide the complete file names was deliberate; the State learned of the difference between Exhibit 21 and the images it provided the defense from Dean Boland at trial. Foreknowledge of the difference would not have benefitted Taylor in the preparation of his case; the trial court found Taylor not guilty of counts 12, 13, 14 and 16, which were based on the four images discussed above. In its Addendum, the trial court noted that if the four images could not be accessed, "and the Court is unsure if that includes when the exhibit was first viewed, it leads the Court to find Counts 12, 13, 14 and 16 have not been established beyond a reasonable doubt. Thus, even if Defendant's claims of discovery violation are accurate, no prejudice has occurred to the Defendant." We agree with the trial court that Taylor was not prejudiced by the State's failure to provide the complete file names for the images. Taylor's first assignment of error is overruled.
 {¶ 27} Taylor's second assignment of error is as follows: "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES WHEN PHOTOGRAPHS OF PRINTOUTS OF ACTUAL DIGITAL IMAGES WERE IMPROPERLY ADMITTED INTO EVIDENCE WITHOUT PROPER AUTHENTICATION IN ACCORDANCE WITH THE RULES OF EVIDENCE AND ESTABLISHED OHIO CASE LAW "
 {¶ 28} "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). "An `original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An `original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an `original.'" Evid. R. 1001(3). "A `duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, * * * or by other equivalent techniques which accurately reproduce the original." Evid. R. 1001(1)(4). "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Evid. R. 1003.
 {¶ 29} The State claimed that the images in Exhibit 21 were "mirror images" of the pictures appearing on Taylor's computer and compact discs. Jim Taylor, a detective with the city of Piqua for thirteen years, and Ervin Burnham, a database administrator and computer forensic analyst for the Miami Valley Regional Crime Laboratory in the Montgomery County Coroner's Office, testified for the State regarding the images in Exhibit 21. Detective Taylor identified the items that were seized from Taylor's home pursuant to a search warrant, including his computer, hard drives, and discs. Burnham described the process he employed to view all of the images on the computer and other media, estimating that he viewed "over a thousand images depicting child pornography total." "In this instance we did a preview of the media to start with and based on that preview a report was generated and then a more thorough examination of all the media was conducted and a final report was completed." Burnham described his use of "a hardware write protection device" that keeps the information in all media from being erased or modified or altered. Burnham described how he bookmarked some color images and then copied them to give to Detective Taylor. Burnham identified the 25 images in State's Exhibit 21 as images bookmarked and copied from Taylor's computer and related media. Detective Taylor described how he selected and photographed the same 25 images from the pictures provided by Burnham: "When all 25 were photographed those were downloaded and then printed out * * * ." Detective Taylor also downloaded the same images onto two compact discs.
 {¶ 30} When admitting Exhibit 21, the trial court, over Taylor's objection, determined the images "have been authenticated for purposes of admissibility by the fact that they were seized in the affidavit from the Defendant's house and those are, that's the same computer that was seized from which the images were taken." The trial court correctly noted in its later Entry that the "authentication inquiry is not what the author (or creator) claimed it to be, but whether the document is what its proponent at trial claims it to be." See Evid. R. 901(A). The State adduced sufficient testimony from Burnham and Detective Taylor to authenticate or identify the images comprising Exhibit 21 as duplicates of the images appearing on Taylor's computer and compact discs. In other words, the trial court correctly admitted Exhibit 21 and concluded, "[i]t then becomes a decision for the trier of fact to assign weight, if any, to the exhibit." See City of Urbana ex rel. Newlin v. Downing (Nov. 16, 1987), Champaign App. No. 87 CA 03. Taylor's second assignment of error is overruled.
 {¶ 31} Taylor's third assignment of error is as follows:
 {¶ 32} "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES WHEN PHOTOGRAPHS OF PRINTOUTS OF ACTUAL DIGITAL IMAGES WERE ADMITTED INTO EVIDENCE BY WHAT APPEARS TO BE AN ABROGATION OF THE RULES OF EVIDENCE BECAUSE OF APPELLANT'S FIFTH AMENDMENT RIGHT TO NOT TESTIFY. SUCH A DOUBLE STANDARD FOR INVOKING RIGHTS PROTECTED BY THE UNITED STATES CONSTITUTION IS IMPERMISSIBLE."
 {¶ 33} Taylor takes issue with the following statement by the trial court: "As to the Defendant's arguments that [the images in Exhibit 21] haven't been authenticated under the circumstances since the property was owned by the Defendant and the State is precluded from calling the Defendant to the stand obviously since he has a right not to testify against himself that rule is abrogated by the fact that they've shown a chain of evidence that the computer came from his house and then the pictures were taken off the computer which came from his house * * * ." According to Taylor the trial court's statement suggests "there are two standards for authenticating pictures. One for when the Defendant does not invoke his Constitutional Rights and another, much more like a chain of custody analysis, when the Defendant does invoke his Constitutional Rights."
 {¶ 34} For the reasons discussed under the first assignment of error, Exhibit 21 was properly authenticated and admitted, and Taylor's third assignment of error is overruled.
 {¶ 35} Taylor's fourth assignment of error is as follows:
 {¶ 36} "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES BECAUSE OF APPELLEE'S FAILURE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT KNOWINGLY POSSESSED THESE DIGITAL IMAGES. THE CONVICTION SHOULD BE SET ASIDE FOR ANY OF THE FOLLOWING THREE REASONS:
 {¶ 37} "1. THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT KNEW ANY OF THESE TWENTY-FIVE DIGITAL IMAGES RESIDED IN THE MANY VARIOUS STORAGE MEDIA SEIZED FROM HIS HOME.
 {¶ 38} "2. THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT OPENED OR VIEWED ANY OF THESE TWENTY-FIVE DIGITAL IMAGES.
 {¶ 39} "3. THAT TESTIMONY OF SUBSTANTIAL ACCESS TO APPELLANT'S COMPUTER BY OTHERS, EASE OF INTERCHANGING REMOVABLE DRIVES FROM APPELLANT'S COMPUTER AND ITS LACK OF PASSWORD PROTECTION MAKE IT IMPOSSIBLE FOR THE STATE TO PROVE BEYOND A REASONABLE DOUBT THATTHIS APPELLANT KNOWINGLY POSSESSED THESE DIGITAL IMAGES."
 {¶ 40} "No person, with knowledge of the character of the material or performance involved, shall * * * (5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants." R.C. 2907.321(A)(5).
 {¶ 41} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. McKnight, 107 Ohio St.3d 101, 112, 837 N.E.2d 315,2005-Ohio-6046 (Internal citations omitted).
 {¶ 42} It was established at trial, as discussed above, that Taylor owned the computer containing the pornography. Burnham testified that he performed a keyword search on the computer for the term "Lolita," " which is a common term used to depict children engaged in sexual activity." According to Burnham, he "got two hundred and twenty-one thousand two hundred and forty-three hits," which indicates "the individual is visiting these types of websites that contain Lolita type images." The trial court found that "the 220,000 plus hits on the `Lolita' word search on the hard drives of the Defendant's computer dispels any argument the sites were visited accidentally or were the result of unintended pop-ups."
 {¶ 43} Angel Taylor, Taylor's fourteen year old daughter, testified that her father had pornography "of adults and kids" on his computer and "he had it up like all the time." Angel said the children she observed were "[t]he age maybe 10 to 14, 15" She also stated that Taylor had a website called "Sexual Twisted Minds."
 {¶ 44} Jordan Taylor, Taylor's eight year old son, testified that he saw "naked people" on Taylor's computer, and that "a few" of them were kids. According to Jordan, "[t]here' s just little tiny blocks of them everywhere and it looked like there was about a hundred."
 {¶ 45} In its Addendum to its General Finding After Trial to the Court, the trial court stated, "The Court finds the testimony of the Defendant's children, that they saw either naked people (including a few kids) on their father's computer when he was in the room or saw pornographic picture[s] of kids on his computer, ages 10 to 15, credible."
 {¶ 46} Burnham testified as follows regarding the existence of temporary internet files he discovered on Taylor's computer: "Based on the location of these, these temporary internet files there was a problem. * * * [I]n Windows 98 one would expect to find temporary internet files in a directory called Windows Temporary Internet files Content IE5. In this instance the files were actually located in a [separate] file. * * * That's a problem in that that's not the normal location where these files are located at and it means that someone took a conscious effort to move these files to these other locations so they could be viewed at a later time. Temporary internet files are like any other file on your computer. If you know where they're located at you can view the contents of them. * * * When the files are moved it means the person wants to save these files for some reason to look at them at a later point in time, * * * or other reasons known only to that individual. * * * It would take some type of a conscious effort to do that though cause we're physically moving entire directories."
 {¶ 47} We agree with the State that Taylor's argument that "the children could have possibly done that or some visitor to the house could have been on that website over 220,000 times, is farfetched and simply unbelievable." Having reviewed the evidence in a light most favorable to the State, we conclude that any rational trier of fact could have found the "with knowledge" element of the pandering charges against Taylor proven beyond a reasonable doubt. Taylor's fourth assignment of error is overruled.
 {¶ 48} We will address Taylor's fifth and sixth assignments of error together. They are as follows:
 {¶ 49} "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES WHEN THE UNITED STATES SUPREME COURT HAS HELD THAT VIRTUAL CHILD PORNOGRAPHY IS PROTECTED SPEECH UNDER THE FIRST AMENDMENT
TO THE UNITED STATES CONSTITUTION." And,
 {¶ 50} "IT WAS ERROR TO CONVICT APPELLANT OF POSSESSING TWENTY-ONE DIGITAL IMAGES WHEN APPELLEE FAILED TO PROVE BEYOND A REASONABLE DOUBT WITH CREDIBLE TESTIMONY BY ANY WITNESS WHO EXAMINED THE ELECTRONIC DIGITAL IMAGES THAT THE IMAGES DEPICTED ACTUAL MINORS, AS OPPOSED TO VIRTUAL MINORS."
 {¶ 51} Taylor relies on Aschcroft v. The Free Speech Coalition (2002),535 U.S. 255-56, a declaratory judgment action in which suppliers of materials portraying children attacked the constitutionality of the Child Pornography Prevention Act of 1996. The court therein held that the provisions of the Act that criminalized possession and/or distribution of virtual child pornography, meaning computer-generated images of minors engaged in sexual activity, were overly broad and unconstitutional. Id. It was significant to the court that the Act generally prohibited speech that may not be obscene. Id. Obscene material is that which, "taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value." Id., citing Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 419
(1973). The Act "proscribed] the visual depiction of an idea — that of teenagers engaging in sexual activity — that is a fact of modern society and has been a theme in art and literature throughout the ages." Id.
 {¶ 52} We discussed the rationale in Aschroft in a recent decision: "First, because a virtual depiction does not involve an actual child in its production, virtual material of that kind `records no crime and creates no victims by it[s] production.' Id., at 236. Second, any causal link to harm suffered by real children in the production of virtual child pornography is contingent and indirect, because it does not necessarily follow from the speech involved but instead depends on some unquantifiable potential for subsequent criminal acts. Id." State v.Gillingham, Montgomery App. No. 20671, 2006-Ohio-5758 (affirming conviction and holding that Ashcroft did not apply to seven counts of pandering obscenity involving a minor).
 {¶ 53} "The question whether images are virtual or real is for the trier of fact to determine. (Internal citations omitted). When the trier of fact is capable of reviewing the evidence to determine whether the prosecution met its burden to show that the images depict real children, the state is not required to present any additional evidence or expert testimony to meet the burden of proof to show that the images downloaded on a computer depict real children. * * * A defendant's claim that the images may have been virtual and not real is purely speculative, and the State is not then required to offer evidence to rebut it." Id.
 {¶ 54} The trial court, in its Addendum, noted that Ashcrofi involved virtual child pornography. R.C. 2907.321(A)(5), however, "involve[s] the use of real children and it is up to the trier of fact to determine by inference and/or direct evidence if the person in the material is in fact a minor, through the material's title, text, visual representation or otherwise." After reviewing the evidence, the court determined that the pictures in Exhibit 21 "depict real individuals under the age of 18 and the pictures are obscene." Accordingly, Ashcroft does not bar Taylor's convictions, and the findings the trial court made are sufficient to support guilty findings. Taylor's fifth and sixth assignments of error are overruled. The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.