[Cite as *State v. George*, 2018-Ohio-5156.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106317**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANIKA GEORGE**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603301-A

**BEFORE:** Laster Mays, J., McCormack, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 20, 2018

-i-

**ATTORNEY FOR APPELLANT**

Daniel J. Misiewicz
The Rockefeller Building, Suite 130
614 W. Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Holly Welsh
          Kristin M. Karkutt
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1}   Defendant-appellant Anika George ("George") appeals her jury conviction in the Cuyahoga County Court of Common Pleas for 117 criminal counts related to the sexual abuse of five minor children.   George received a sentence of life with the possibility of parole after 139 years.   George appeals the convictions.   We affirm.

## I.     Summary

{¶2}   George was arrested on August 5, 2014, for activities occurring on or about July 5, 2014, until the time of her arrest.   George and codefendant Andre Boynton ("Boynton") were indicted for engaging in the sexual abuse of Boynton's niece, A.B., a mentally disabled 14-year-old female, and four boys: 13-year-old J.W., 12-year-old J.L. and M.D., and 9-year-old J.B.   For several weeks, George engaged in sexual activities with the boys and instructed the boys

to engage in sexual activities with A.B. George photographed and videotaped the acts as well as the genitalia of the minors.

**{¶3}** Boynton, who has an extensive criminal record, and George met in 1994 when Boynton was in prison. Boynton considered George to be a girlfriend. Boynton was incarcerated in February 6, 2014, for unrelated rape and kidnapping charges and was serving the sentence at the time of trial.

**{¶4}** Boynton testified at trial that he telephoned George from the penal institution three or four thousand times during the 2013 to 2014 time period. During those calls, the sexual activities underlying the charges in this case were discussed. Boynton instructed George to perform various sexual acts with the minors and to videotape and photograph the acts and individuals. Boynton also instructed George to engage in sexual activities with elderly disabled men and women at her place of employment and to videotape and photograph the acts and individuals.

**{¶5}** The mother of one of the minor boys discovered the activities and notified the police. The investigation led to George and Boynton. Evidence included videos and photographs of sexual activities as well as telephone recordings and correspondence between George and Boynton.

**{¶6}** George and Boynton were tried jointly and convicted. George was initially charged with 150 counts. The state dismissed 33 counts at the close of the state's case. On August 4, 2017, the jury returned a verdict of guilty on 117 of the 118 remaining counts. *See* journal entry No. 99971691 (Aug. 4, 2017).

**{¶7}** George appeals her convictions.[1]

---

[1] Boynton also appealed his convictions. *State v. Boynton*, 8th Dist. Cuyahoga No. 106301, 2018-Ohio-4429.

## II. Assignments of Error

**{¶8}** George proffers four assigned errors:

I.      Appellant was denied her right to a speedy trial pursuant to R.C. 2945.71.

II.      Trial counsel was ineffective for failing to file a motion to sever.

III.      The prison phone calls and phone records were admitted without proper authentication, violating appellant's right to confrontation.

IV.      The trial court failed to make the necessary findings to impose consecutive sentences.

## III. Analysis

### A. Speedy Trial

#### 1. Standard of Review

**{¶9}** This court applies a de novo standard of review to the question of law involved in a speedy trial violation allegation while affording "'great deference'" to the trial court's findings of fact. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 19, quoting *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17.

**{¶10}** We balance a strict construction of the speedy trial statutes against a determination of whether the trial court's findings are based on competent credible evidence and whether the trial court properly applied the law to that evidence. *State v. McCaughey*, 8th Dist. Cuyahoga No. 106311, 2018-Ohio-3167, ¶ 8, citing *State v. Loder*, 8th Dist. Cuyahoga Nos. 93242 and 93865, 2010-Ohio-3085, ¶ 9, and *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

---

While the cases are consolidated for briefing and argument, the opinions will be issued separately.

### 2. Discussion

{¶11} A "defendant's right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and is made obligatory on the states by the Fourteenth Amendment." *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40 (1976), citing *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Article I, Section 10 of the Ohio Constitution also provides the guarantee. *Id.*, citing *State v. Butler*, 19 Ohio St.2d 55, 249 N.E.2d 818 (1969).

{¶12} The speedy trial provisions are codified at R.C. 2945.71, 2945.72, and 2945.73. R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." *State v. Walker*, 8th Dist. Cuyahoga No. 99239, 2013-Ohio-3522, ¶ 11, citing R.C. 2945.71(C)(2) and *State v. Ginley*, 8th Dist. Cuyahoga No. 90724, 2009-Ohio-30. Pursuant to R.C. 2945.71(E), each day that an accused is incarcerated counts as three days for speedy trial calculation purposes. *Walker* at ¶ 11. The failure to provide a speedy trial results in dismissal. *Shabazz,* 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, at ¶ 22, citing R.C. 2945.73(B).

{¶13} A prima facie case for dismissal is established where the time period has expired, shifting the burden to the state to demonstrate tolling of the period pursuant to R.C. 2945.72. *Shabazz* at ¶ 22, citing *State v. Howard,* 79 Ohio App.3d 705, 607 N.E.2d 1121 (8th Dist.1992). The time period is tolled by circumstances including: periods of mental incompetence, an accused's lack of counsel or improper acts, delays due to motions or actions instituted by the accused, and continuances granted on the motion of the accused. R.C. 2945.72(B), (C), (D), (E), and (H). *See also Shabazz* at ¶ 23 and *Walker* at ¶ 14.

**{¶14}** The tolling period for motions filed by an accused pursuant to R.C. 2945.72(E) provides a "reasonable time" for the state to respond. *Walker* at ¶ 15. This court has determined that "30 days" is a "reasonable time." Motions that fall within the purview of R.C. 2945.72(E) include motions for a bill of particulars, for discovery, and to disqualify counsel. *Walker* at ¶ 15-16.

**{¶15}** George was arrested on August 5, 2014. On August 27, 2014, a 97- count indictment was returned by the grand jury. *State v. George*, Cuyahoga C.P. No. CR-14-588126-A. George was arraigned on September 2, 2014. Counsel was appointed, and a motion for discovery was filed on September 4, 2014. At this point, George had been incarcerated for 31 days.

**{¶16}** Also on September 4, George requested a bill of particulars. The state responded on September 11, 2014, and concurrently served George with a discovery demand. George failed to respond to the discovery, tolling the time for speedy trial purposes pursuant to R.C. 2945.72(D) and (H). This fact alone is sufficient to toll the time as we stated in *State v. Mitchell*, 8th Dist. Cuyahoga No. 88977, 2007-Ohio-6190, finding that a defendant's failure to respond to discovery tolled the speedy trial time until trial. *Id*. at ¶ 35.

**{¶17}** The defense requested pretrial continuances on September 2, 8, 18, and October 2, 15, and 29, 2014. On November 18, 2014, George's motion for appointment of a defense psychologist was granted. From November 18, 2014, to March 15, 2015, the defense requested nine consecutive pretrial continuances.

**{¶18}** At the March 26, 2015 pretrial, the trial court referred George to the court psychiatric clinic pursuant to R.C. 2945.71 to determine her competency to stand trial and set the next pretrial date for April 10, 2015. A trial court's order for a competency examination tolls the

speedy trial time. "The express language of R.C. 2945.72(B) is broadly worded to include any period in which the accused's mental competency is being determined." *State v. Cook*, 2016-Ohio-2823, 64 N.E.3d 350, ¶ 82 (5th Dist.), citing *State v. Palmer*, 84 Ohio St.3d 103, 106, 702 N.E.2d 72 (1998).

{¶19} The April 10, 2015, and April 27, 2015 pretrials were continued at the request of the defense. George was still undergoing psychiatric evaluation, and on May 11, 2015, the parties stipulated to the court psychiatric report and George was transferred to Northcoast Behavioral Health ("NBH") for treatment. On August 31, 2015, the court was informed that George had been restored to competency and ordered her transferred from NBH. However, the scheduled hearing was continued due to an ongoing psychiatric evaluation. On October 1, 2015, George appeared and the parties stipulated to competence.

{¶20} A new attorney was appointed for George at the October 2, 2015 pretrial, and the pretrial was continued at the request of the defense due to ongoing discovery. From October 2, 2015 to December 18, 2015, six consecutive pretrials were continued at the request of the defense.

{¶21} On December 18, 2015, the trial court again referred George to the court psychiatric clinic to determine competency to stand trial. On January 21, 2016, George was again transferred to NBH for inpatient treatment due to her refusal to cooperate with the court psychiatric clinic. The February 10, 2016 and March 1, 2016 pretrials were continued at the request of the defense. The latter request was due to a new indictment. The matter was then continued to March 23, 2016.

{¶22} The March 23, 2016 pretrial was continued at the request of the defense. On March 26, 2016, the state responded to a defense request for discovery and served discovery on George that was not responded to. An April 6, 2016 nunc pro tunc entry indicates that a competency

hearing was held on April 4, 2016, and George was declared competent to stand trial. The defense requested a pretrial continuance to April 19, 2016. These events tolled the speedy trial period. R.C. 2945.72.

**{¶23}** At the April 19, 2016 pretrial, the trial court granted the state's request to dismiss all counts due to George's reindictment in the instant case on February 18, 2016. *State v. George*, Cuyahoga C.P. No. CR-16-603301-A. The reindictment contained 150 counts against George, and Boynton was added to the indictment. *State v. Boynton*, Cuyahoga C.P. No. CR-16-603301-B. The pretrial was continued to May 10, 2016, at the request of the defense. The June 8, 2016 pretrial was continued to July 28, 2016, at the request of the defense. On June 15, 2016, defense counsel filed a motion to withdraw. The motion was granted on July 13, 2016. A defense motion for discovery was filed on July 14, 2016. These events tolled the speedy trial period. R.C. 2945.72.

**{¶24}** At the July 30, 2016 pretrial, new defense counsel was appointed, and the defense sequentially requested pretrial continuances to August 11, 2016, August 22, 2016, and September 1, 2016. The next pretrial was set for September 22, 2016, and the sheriff was ordered to transport George to the hearing using all necessary means. The tolling of George's speedy trial period continued.

**{¶25}** At the September 22, 2016 pretrial, defense counsel informed the trial court of George's refusal to meet with him. When questioned, George advised the trial court:

> DEFENDANT: May I just say, your Honor, that I am the beneficiary. That I have explained that in a letter to yourself that I am not a participant. I believe that I have something on file with the [s]tate of my political standing, and that I do not know what has come to me or has been given to me about any type of documentation in writing as to my business with this [c]ourt.

| | |
|---|---|
| COURT: | Okay. You do understand your attorney, this attorney, has been assigned to help you with your defense in this case? Do you understand that? |
| DEFENDANT: | I do not, your Honor, have an attorney. I do not wish to be a part of this. There is no reason as to why I should still be here. I believe that I was here on April 4th, 2016, which is on the record, so I am not sure as to why this is continuing. |
| COURT: | Okay. Do you understand there has been an indictment filed against you? |
| DEFENDANT: | No, I have not. |
| COURT: | Okay. If you meet with your attorney, your attorney can go over that with you. |
| DEFENDANT: | I do not wish to have any type of representation. I have not received any documentation for the charges. |
| COURT: | Are you saying that you wish to represent yourself? |
| DEFENDANT: | I do not have any reason to represent myself, your Honor. |

(Tr. 47-49.) The pretrial was continued to October 28, 2016, at the request of the defense. The sheriff was again ordered to transport George by any means necessary.

{¶26} George continuously refused to meet with defense counsel after the September 22, 2016 hearing. George also refused to attend the October 28, 2016 pretrial hearing where the parties were to review the evidence. Defense counsel met with George in the holding room and explained the purpose of the hearing, but George refused to review the evidence. George still refused to cooperate and on December 2, 2016, filed a pro se "demand for discharge of defendant." The trial was originally scheduled for January 23, 2017. The trial court set a pretrial for January 10, 2017, and scheduled trial for April 3, 2017. The pretrial was rescheduled to February 2, 2017, at the request of the defense. Defense counsel moved to withdraw on January 24, 2017, and new defense counsel was assigned.

{¶27} A fourth defense counsel was assigned on January 24, 2017, who filed a discovery demand on January 25, 2017. The February 2, 2017 pretrial was continued to February 3, 2017, at the request of the defense. The state filed supplemental discovery responses on February 17, 2017, March 22, 2017, and March 23, 2017.

{¶28} George and codefendant Boynton filed motions to dismiss on March 29, 2017, for violation of their speedy trial rights that was entertained at a hearing on April 3, 2017. The current defense counsel for George advised that George had consistently refused to communicate with him "in any way shape or form." (Tr. 77.) The trial court denied the speedy trial motions observing that all motions for continuances were made at the request of the defense.

{¶29} The April 4, 2017 pretrial was continued to April 12, 2017, at the request of the defense, and trial was moved to July 17, 2017. The state filed an additional supplemental response to discovery on May 23, 2017, and a motion for a competency hearing on July 11, 2017. The trial court ordered the sheriff to bring the still uncooperative George to a July 14, 2017 hearing on the motion by any means necessary. The trial was continued on July 17, 2017, to obtain an HIV test as requested several months earlier.

{¶30} Three more continuances were granted at the request of the defense. The jury trial finally commenced on July 24, 2017. George was disruptive during the proceedings and repeatedly addressed the trial court directly without permission. George was removed from the courtroom after warnings on July 25, 2017, and requested removal on July 26, 2017, choosing not to be present.

{¶31} The record is replete with continuances requested by the defense for reasons including George's ongoing refusal to communicate with assigned counsel requiring a total of

four counsel appointments. R.C. 2945.72(C), *State v. Rodriguez*, 8th Dist. Cuyahoga No. 85856, 2005-Ohio-6485, ¶ 12.

**{¶32}** The speedy trial time was also tolled for George's multiple periods of psychiatric examination and treatment due to mental incompetence. R.C. 2945.72(B). *State v. Bethea*, 8th Dist. Cuyahoga No. 87088, 2006-Ohio-4758, ¶ 16, citing *State v. Palmer*, 84 Ohio St.3d 103, 1998-Ohio-507, 702 N.E.2d 72.

**{¶33}** Further tolling the time period were impediments posed by George's refusal to communicate or cooperate with any of the assigned counsel, her disruptions at hearings as a result of those refusals, and repetitive assertions of irrelevant defenses resulting in trial court continuances. *State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, ¶ 17, citing R.C. 2945.72(D) and (H).

**{¶34}** The trial court properly journalized the disruptions, competency issues and other grounds for continuances, and identified the requesting party. *State ex rel. Bradley v. Astrab*, 8th Dist. Cuyahoga No. 98529, 2012-Ohio-4610, ¶ 5, citing *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982).

**{¶35}** George cites *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991), for the premise that the speedy time trial began to run upon the first indictment and continued through the subsequent indictment because it was based on the same facts. The state offers that the additional charges were based on evidence discovered after the initial indictment and that Boynton was added as a codefendant. As a result, the indictment was based on new facts pursuant to *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997).

**{¶36}** *Broughton* held that where a first indictment is dismissed without prejudice and a subsequent indictment is based on the same facts, the period in between those events may be

assessed against the state if the defendant is in jail. *Id*. at 259-260. *Baker* held that where a subsequent indictment is "based on new and additional facts which the state had no knowledge of at the time of the original indictment," the intervening period would not be held against the state for speedy trial purposes. *Id*. at ¶ 11. "Additional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation." *Id*.

{¶37} George was arrested on August 5, 2014, and indicted on August 27, 2014. The current indictment was issued on February 18, 2016.[2] The additional charges in the second indictment were based on child pornography discovered on George's electronic devices after the initial indictment, and Boynton was added as a codefendant.

{¶38} The record demonstrates that George's lack of cooperation was ongoing and strategic, so much so that the trial court was required to advise George at the inception of the trial that her behavior would not be tolerated and that the trial would move forward even if George had to be removed from the courtroom. We agree with the state's calculation and find that 31 days accrued for speedy trial purposes during the 1,085 days of incarceration attributable to George's purposeful ongoing refusal to cooperate with defense counsel, periods of incompetence, and numerous requested continuances. We will not and cannot allow a defendant to purposefully manipulate our system of justice by refusing to cooperate in his or her own defense to invoke a dismissal of the charges. The speedy trial right is designed to serve as a shield for the

---

[2] On December 18, 2015, George was referred for another competency assessment resulting in her transfer to NBH for inpatient treatment on January 21, 2016. On April 6, 2016, George was again deemed to be competent to stand trial so that she could be served with the new indictment and the original indictment dismissed. This period tolled the time for speedy trial calculation purposes. R.C. 2945.72(B).

defendant's protection and is not to be used as a sword to escape. *People v. Tetter*, 42 Ill.2d 569, 576, 250 N.E.2d 433 (1969).

**{¶39}** We also find that *Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883, applies in this case, and the speedy trial period was not exceeded.

**{¶40}** The first assigned error is without merit.

### B.        Ineffective Assistance due to Failure to Sever

**{¶41}** George argues that joinder of George and Boynton was not improper at the inception of the case but, as the trial progressed, George was prejudiced by the joinder and counsel should have filed a motion to sever. We disagree.

**{¶42}** To substantiate a claim of ineffective assistance of counsel, George must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶43}** Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). We consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Id*. at 690.

**{¶44}** Crim.R. 8(B) provides,

[t]wo or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or

more counts together or separately, and all of the defendants need not be charged in each count.

**{¶45}** Crim.R. 14 allows for a trial court to order relief from joinder where a defendant demonstrates prejudice. *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 22, citing *State v. Harris-Powers*, 8th Dist. Cuyahoga No. 87921, 2007-Ohio-389, ¶ 17, citing *State v. Owens*, 51 Ohio App.2d 132, 366 N.E.2d 1367 (9th Dist.1975).

**{¶46}** "[L]aw and public policy generally favor the joinder of charges and defendants, which involve the same acts, transactions, or course of criminal conduct." *Id.*, citing Crim.R. 8; *State v. Dunkins*, 10 Ohio App.3d 72, 460 N.E.2d 688 (9th Dist.1983), syllabus. "Joinder conserves judicial and prosecutorial time," reduces the expense of "multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

**{¶47}** Generally, "joinder of defendants is proper as long as 'all defendants participated in the same series of transactions leading to the charges.'" *State v. Shedwick*, 8th Dist. Cuyahoga No. 71749, 1997 Ohio App. LEXIS 5227, 19-20 (Nov. 20, 1997), quoting *State v. Schiebel*, 55 Ohio St.3d 71, 88-89, 564 N.E.2d 54 (1990). Joinder is proper "even if [the joined defendants] did not participate in every act and were not all charged in each count of the indictment." *Id*.

**{¶48}** The evidence in this case supporting conviction was substantial. Even excluding the prison call records that George argues would have been limited if the cases were severed, the DNA evidence, photographic and video evidence of George engaging in and recording illicit acts with and by the victims, and the testimony of the victims[3] support the convictions in this case. "[C]ounsel is not required to file futile motions" where success is improbable. *State v. Hudson*,

---

[3] The mentally challenged minor female was deemed incompetent to testify in the case.

8th Dist. Cuyahoga No. 102767, 2015-Ohio-5424, ¶ 9, citing *State v. Martin*, 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1st Dist.1983), and *State v. Parra*, 8th Dist. Cuyahoga No. 95619, 2011-Ohio-3977, ¶ 78.

**{¶49}** George has not demonstrated that she was prejudiced by the asserted failure. Prejudice requires a showing to a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Bankston*, 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, ¶ 55.

**{¶50}**　The second assigned error is overruled.

### C.　　Admission of Prison Communication Records

**{¶51}**　George argues here that the prison telephone calls and records were inadmissible because they were not authenticated, violating her right to confrontation.　We also find that this error lacks merit.

**{¶52}** The admission or exclusion of relevant evidence rests within the discretion of the trial court.　*State v. Robb*, 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000).　An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion.　*Donovan v. Donovan*, 110 Ohio App.3d 615, 620, 674 N.E.2d 1252 (12th Dist.1996); *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, ¶ 23. An abuse of discretion standard "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."　*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶53}** George offers that the documents are inadmissible hearsay pursuant to Evid.R. 803 because the author of the records did not testify and the records do not qualify as an exception to the rule.　*State v. Boiani*, 8th Dist. Cuyahoga No. 98314, 2013-Ohio-1342, ¶ 28, citing *State v.*

*Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 21-22.   The state responds that the documents fall within the business exception to hearsay.   Evid.R. 803(6).

{¶54} The parties agree that to qualify as a business exception to the hearsay rule, the records must meet the following requirements:

> (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness.

*Id*. at ¶ 29, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶55}   Aaron Alexander ("Alexander") was called by the state to testify regarding the prison call records.   Alexander was employed by the North Central Correctional Complex located in Marion, Ohio ("Marion") where Boynton was incarcerated during the 2014 time period. Alexander conducted administrative investigations at Marion of internal illegal operations by inmates such as gang activities, contraband and drug transactions, and the operation of illegal outside businesses by inmates.   Tools regularly used by Alexander as part of his investigation included social media and the Global Tel Link prison telephone system ("GTL") that services all Ohio penal institutions.

{¶56} Alexander explained the process for inmates' use of the system. Inmates are assigned six-digit codes and four-digit pin numbers.   They must also state their names for voice verification.   Each inmate is allowed a list of 15 approved telephone number contacts, excluding their attorneys.   Inmates purchase telephone time at the commissary.   A 15-minute call limit applied during the period in question.

{¶57} Alexander advised the Cleveland detective that contacted him about Boynton that, as part of his duties, he had telephone records for inmates including Boynton.   Alexander

processed the subpoenas for those records by accessing the GTL records from the GTL computer located in his office and downloading the records consisting of 2,400 to 3,000 calls to approximately 60 discs over a period of 80 hours. Call information for all prisons is retained on the main server at GTL.

{¶58} A state trooper also became involved in the internal investigation as a result of the Cleveland inquiries. A subsequent search of Boynton's cell uncovered inappropriate photographs of minors. Prison records also reflected George's visits with Boynton.

{¶59} A printout from the GTL server was introduced into evidence. Alexander explained various entries including how the GTL system record identified the inmate. Alexander also confirmed through detailed testimony describing the exhibits that the records are retained on the GTL system in the ordinary course of business.

{¶60} The disks downloaded by Alexander were introduced into evidence and several recordings were played for the jury. Alexander further confirmed that the recordings were accurate records kept in the ordinary course of business at Marion "through a computer system" that GTL provides that is housed in his office. (Tr. 949.) Alexander burned the disks but did not listen to all of the recordings.

{¶61} The trial court overruled defense objections to admission of the GTL call recordings:

> The [c]ourt finds that the GTL system was used in the ordinary course of business at the correctional institution.

> Mr. Alexander did testify that he has a computer with the GTL system in his office and I do recall his testimony and found him to be the proper person to authenticate those records.

(Tr. 1349.)

**{¶62}** The trial court also admitted the GTL spreadsheets over the defense objections. "These documents, based on the testimony of Mr. Alexander, are kept in the ordinary course of business at the state institution." (Tr. 1353.)

**{¶63}** The record reflects that Alexander demonstrated personal knowledge of the records that were maintained, retrieved, and accessed through the GTL computer located in his office. Alexander also exhibited extensive knowledge of the system information due to training and regular access to the records that were maintained in the ordinary course of business.

**{¶64}** This court has previously recognized:

> The Evidence Rules allow business records to be admitted into evidence if it can be shown by the testimony of either the custodian or some other qualified person that the record meets the specific safeguards of reliability identified in Evid.R. 803(6). In addition, the phrase "other qualified witness" should be broadly interpreted. It is not necessary that the witness have first hand knowledge of the transaction giving rise to the record. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance, and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).

*State v. Sherrills*, 8th Dist. Cuyahoga No. 89844, 2008-Ohio-1950, ¶ 31.

**{¶65}** Our finding that the admission was proper under Evid.R. 803(6) renders the assertion by George that her constitutional right to confrontation was infringed to be misplaced. The third assigned error is overruled.

#### D. Consecutive Sentences

**{¶66}** We have held that

[a]n appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. [Cuyahoga] No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3d Dist. [Hardin] No. 6-11-07,

2012-Ohio-1892, ¶ 7. Specifically, R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id*. If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id*.

*State v. Lebron*, 2012-Ohio-4156, 976 N.E.2d 945, ¶ 5 (8th Dist.).

**{¶67}** A trial court is required to "make three statutory findings" under R.C. 2929.14(C) "in order to impose consecutive prison terms for convictions of multiple offenses." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252, citing R.C. 2929.14(C) and *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶68}** First, a trial court must find that consecutive sentences are "necessary to protect the public or to punish the offender. R.C. 2929.14(C)(4)." *Id*. at ¶ 252. Second, a trial court "must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public." *Id*. The third requirement is that the trial court make one of the findings set forth in R.C. 2929.14(C)(4)(a)-(c). *Id*. The findings must be set forth on the record at the sentencing hearing as well as in the sentencing entry. *Id.* at ¶ 253, citing *Bonnell* at ¶ 37.

**{¶69}** The findings set forth in R.C. 2929.14(C)(4)(a)-(c), provide:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶70}** George offers that the trial court failed to make the proportionality finding on the record that the imposition of consecutive sentences was not disproportionate to the seriousness of the conduct and to the danger posed to the public, though George concedes that the statement is expressly included in the journal entry. The sentencing transcript confirms that the trial court, in fact, addressed the proportionality and danger to public issue as the italicized language below reflects:

COURT: The court notes for the record that it has considered the record and the oral statements made here today. The court must and has formulated its decision based upon the *overriding principles and purposes of felony sentencing, namely to protect the public from future crime* by these defendants using the minimum sanctions that the court determines accomplishes those purposes without imposing an unnecessary burden on state or local government resources.

To achieve these purposes, the court has considered the need for incapacitation, for deterrence, for rehabilitation. The court has considered the seriousness and recidivism factors relevant to these offenses and these offenders.

When I consider the seriousness and recidivism factors, *I can't imagine a case more serious than this.* The essence of a child is purity, joy, a carefree spirit. You stole that from these children. You took the dignity of elderly victims.

What the jury found you guilty of is *rounding up a bunch of children, little children, off the streets and raping them.* You exploited their age and their property. You stripped them of their childhood and their innocence. *The damage that you caused * * * [the victims] will stay with them for the rest of their lives.* * * *

From the moment the [disabled minor victim] stepped into the courtroom it was clear she was incompetent to testify. She operates her life with the mentality of a toddler. *For you to have the ability to put this innocent child through the horrors she sustained while in your care is incomprehensible.*

The jury found you guilty of taking [lewd] pictures of 11 elderly [nursing home] patients in your care. These victims were the most vulnerable. They were in such a state of vulnerability and you took advantage of it. *Their families put them in your care and you exploited them.*

As to the recidivism factors, I agree with the State of Ohio. *Neither of you have shown remorse, no consideration for the lives that you damaged, and you only care about yourself.* * * *

*The court has ensured that the sentence being imposed does not demean the seriousness of the crime and the impact that it has on the victims and our community.* And it is consistent with other similar offenses committed by like offenders. * * *

Ms. George, the court finds that *the imposition of consecutive prison sentences is necessary to protect the public and to punish you and is not disproportionate with other similar offenses committed by like offenders.* This court also finds that *two or more of the multiple offenses were committed as a single course of conduct and the harm was so great, heinous, and unusual, that a single term does not adequately reflect the seriousness of the conduct.*

(Emphasis added.) (Tr. 1713-1717.)

**{¶71}** The trial court clearly addressed the fact that the sentence is not disproportionate to the heinous conduct and cites the danger that George poses to the public. The trial court combined its analysis but, looking at the record as a whole, the trial court did address the proportionality prong of R.C. 2929.14(C). A trial court is not required to recite the language from R.C. 2929.14(C)(4) verbatim.

> The statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words," however, it must be *clear from the record that the trial court actually made the findings required* by statute. [*State v.*] *Venes*, [8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, 992 N.E.2d 453,] at ¶ 14, 17; *see also State v. Pierson*, 1st Dist. Hamilton No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998).

(Emphasis added.) *State v. Marton*, 8th Dist. Cuyahoga No. 99253, 2013-Ohio-3430, ¶ 13.

**{¶72}** We find that the trial court made the proper findings for the imposition of consecutive sentences on the record. The fourth assigned error also lacks merit and is therefore overruled.

## IV. Conclusion

**{¶73}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules

of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

TIM McCORMACK, P.J., CONCURS IN JUDGMENT ONLY;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY